IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

REBECCA Z.,

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 6:25-cv-01105-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Rebecca Z.[1] seeks judicial review of the Commissioner's final decision denying Social Security disability benefits. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is AFFIRMED.

## I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ noted that plaintiff claimed she was unable to work on a regular basis due to multiple impairments, including chronic fatigue, fibromyalgia, depression, and ADHD. Tr. 21. The ALJ described plaintiff's testimony that she "typically did nothing" all day other than sit with her legs elevated, except to use the bathroom, and slept a lot. Tr. 21-22. At the hearing, plaintiff testified that she did not leave the house except to attend doctor's appointments. Tr. 40.

She explained that she has "extreme issues with [her] lower extremities," specifically, her legs are numb and she cannot feel from her midthigh down, which prevented her from driving. Tr. 37. She claimed her "equilibrium is off," causing her to get dizzy very easily, Tr. 37, and she cannot work because she gets very dizzy and very tired. Tr. 41. When asked what she does in a typical day, plaintiff replied, "Honestly I don't do anything," and described that she sits with her legs elevated a lot because they are numb and painful. Tr. 42. She gets up to use the bathroom and sometimes to get something to eat that is premade, but it depends on how badly her legs are hurting and how dizzy she is. Tr. 41–42. Plaintiff testified that she was "extremely depressed" and did not interact with anyone, other than her husband. Tr. 48. The ALJ also noted plaintiff's function report in which she described that she got confused "a lot." Tr. 18 (citing Tr. 229); *see also* Tr. 460, 580, 591, 698 (chart notes in which plaintiff claimed her cognition "sucks").

The ALJ concluded that plaintiff's statements regarding the extent of her symptoms were inconsistent with the medical evidence, which suggests that "she retains significant physical and mental functioning." Tr. 22. The ALJ pointed to 2022 records from Oregon Neurology Associates where plaintiff underwent MRI testing for demyelinating disease, which proved to be negative. The ALJ noted plaintiff's clinical presentation at that time included normal gait and "smooth, coordinated movement." Tr. 22 (citing Tr. 483). The ALJ also observed that "[n]otwithstanding" plaintiff's fibromyalgia disorder, treatment notes from June 16, 2022, indicate plaintiff's appearance was "healthy,"[2] she was smiling and alert, and she displayed normal speech and normal cognitive status. Tr. 22 (citing Tr. 650). The ALJ found "[s]uch evidence argues against a

---

[2] The ALJ also noted the record stated "no distress." Tr. 22. "[B]rief, generic notations of 'no acute distress,' without more, do 'not constitute an objective medical finding that is inconsistent with severe fibromyalgia.'" *Krystal Kovrig, Plaintiff, v. Comm'r of Soc. Sec. Admin., Defendant.*, No. CV-25-00324-TUC-RM, 2026 WL 2516710, at *3 (D. Ariz. Aug. 26, 2026) (citing *Reinertson v. Barnhart*, 127 F. App'x 285 n.2, 290 (9th Cir. 2005)).

debilitating pain or mental condition." Tr. 22. The ALJ cited to other records showing plaintiff presented as "cooperative, calm, and pleasant" within a clinical setting, which the ALJ concluded undercut the extent of plaintiff's depressive symptoms. Tr. 19 (citing Tr. 782) ("cooperative, calm, and pleasant," "Cognition: oriented to situation, time, place, and person, normal attention and concentrating ability; and alert and memory intact," "Affect: pleasant and congruent to thought content," intact judgment, thought processes, and motor activity). The ALJ further found that plaintiff's "subjective complaints did not seem to align with her clinical presentation where she was able to explain complex statements without any problems" and observed that a "consultative examiner noted [plaintiff's] performance on standardized testing indicated [she] had 'very mild deficits in the areas of speech and language.'" Tr. 18-19 (citing Tr. 1316). The ALJ properly weighed these inconsistencies to undercut the severity of plaintiff's claims. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony").

Additionally, the ALJ observed that the "difficult[y] in this case arises from the recurring inconsistencies between [plaintiff's] subjective complaints and her clinical presentation." Tr. 22. For example, the ALJ noted that, in April 2023, plaintiff went to the emergency department complaining of bilateral leg pain and swelling after a surgery that occurred several weeks earlier; however, she retained lower extremity sensation and motor strength, was able to move all extremities equally, and was "safely discharged." *Id.* (citing Tr. 1260–61) ("Sensation to the lower extremities intact," "Moves all extremities equally," 5/5 muscle strength, "safely discharged").

The ALJ further observed that, in December 2023, plaintiff went to the emergency department complaining of chest pain, shortness of breath, and bilateral lower leg and feet pain, but her laboratory results, EKG, and medical imaging were all within normal limits. Tr. 22 (citing Tr. 1786). The ALJ also noted that plaintiff played games on her phone the majority of the appointment while exhibiting normal mobility in all of her extremities. *Id.* (citing Tr. 1786). The medical records corroborate the ALJ's findings. Tr. 1786 (indicating plaintiff ambulated without assistance, normal mood, normal movement of all extremities, "labs ok, EKG normal, Xray normal"). Plaintiff was prescribed metformin to manage her elevated blood sugar and discharged. *Id.* The ALJ further observed that shortly thereafter, plaintiff complained at a medical appointment that she had been experiencing neurological muscle weakness for over a year, but a full neurological exam was completed and no abnormalities were observed other than mild muscle weakness in lower extremities, and plaintiff exhibited normal motor strength and full range of motion in all extremities. Tr. 22–23 (citing Tr. 1783). Chart notes reflect that plaintiff and her husband both requested additional imaging studies, but the provider explained "there is no indication for imaging at the moment." *Id*. An ALJ may rely on inconsistencies such as these to discredit the severity of a claimant's subjective symptom complaints. *See Smartt*, 53 F.4th at 498.

The ALJ further found the "evidence as a whole" did not suggest it was "medically justified" that her husband—who was receiving both social security and VA disability benefits after, as plaintiff described, he was "hit by a missile"—had to perform household chores, prepare meals, and drive a car for her.[3] Tr. 19, 23. Otherwise stated, the ALJ found it was "not reasonable

[3] In the function report, plaintiff described that her husband cooks, cleans, shops, pays bills, feeds the cats and changes kitty litter, prepares her medication, and takes care of the grandson when he comes over, including bathing him and putting him to bed. Tr. 227–32.

to believe that, given her husband's condition, plaintiff did nothing at all while he took care of everything." *McComas v. Astrue*, No. CIV.A.3:08-0832, 2010 WL 324420, at *3 (S.D.W. Va. Jan. 20, 2010) (finding the ALJ's reasoning in this regard was persuasive and his explanation was thorough).

The ALJ also discounted plaintiff's subjective symptom complaints because of her inconsistent testimony about prior drug use. At the August 2024 hearing, plaintiff testified that she last ingested methamphetamine earlier that year when she inadvertently drank methamphetamine-laced Gatorade at her brother's house. Tr. 44. Plaintiff added that, prior to that, she had not used methamphetamine in the past five years. Tr. 44. The ALJ found plaintiff's testimony was undermined by records indicating she was discharged from a pain clinic less than five years before, in July 2020, due to methamphetamine use. Tr. 23; *see* Tr. 795 (indicating plaintiff was referred to pain management clinic but discharged in August 2020 due to methamphetamine abuse), Tr. 865 (plaintiff's admission that she used methamphetamine twice when discharged from pain clinic), Tr. 948. The Commissioner also points to records from March 19, 2024, reflecting plaintiff "does use methamphetamine," she smokes and does not inject, and her last use was "about a week ago," and she had a positive toxicology screening for opiates, methamphetamines, and amphetamines. Tr. 1684.

Plaintiff's statement that she last used methamphetamine five years ago when it was in fact four years before is a minimal discrepancy. Moreover, the March 2024 records indicating methamphetamine use coincide with plaintiff's August 2024 testimony that she had inadvertently ingested methamphetamine earlier that year. Also, chart notes indicating plaintiff's method of ingesting methamphetamine is consistent with her explanation that she inadvertently drank it, i.e., she did not smoke it as she had done in the past. Records otherwise indicate that blood

testing was negative for methamphetamines and amphetamines. *See* Tr. 1141 (March 2023 testing).

Nevertheless, it is unnecessary to reach this issue or decide whether any of the other reasons[4] the ALJ provided were legally sufficient because the ALJ identified at least one clear and convincing reason, supported by substantial evidence, to discount plaintiff's subjective symptom testimony.

## II. Medical Opinion Evidence

### A. Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's

[4] For example, the ALJ observed that plaintiff continued to smoke a pack-and-a-half of cigarettes daily contrary to medical advice. Tr. 23. Plaintiff was repeatedly advised to stop smoking, Tr. 421, 467, 476, 759, 884, 1256, 1796, and she was advised that smoking "may also contribute" to her symptoms in the context of discussing fibromyalgia. Tr. 465.

policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

**B. Naeema Elmi, M.D.**

Dr. Naeema Elmi completed a Treating Source Statement on August 15, 2024, opining that plaintiff demonstrated limitations in her activities of daily living due to her small vessel disease, and has weakness, numbness, and pain in her upper and lower extremities. Tr. 1963. Dr. Elmi noted that plaintiff had multiple MRIs and CT scans, which were all abnormal. Tr. 1964. Dr. Elmi opined that plaintiff would have to lie down or rest periodically multiple times a day for 20 to 30 minutes, Tr. 1964, and would be absent from work more than four days per month. Tr. 1967. Dr. Elmi was unable to assess plaintiff's ability to walk, sit, and stand because of her chronic pain, antalgic gait, and muscle weakness.

The ALJ found Dr. Elmi's opinion was unpersuasive. The ALJ noted that "[w]hile Dr. Elmi's limited opinion is reasonable supported by [plaintiff's] most recent treatment notes—they are not consistent with [plaintiff's] previous clinical presentation (cited above) during the majority of the adjudicative period." Tr. 24. The portions that the ALJ indicated were "cited above" pertain to plaintiff's subjective symptom testimony. For the same reasons discussed above, these records do not support and are not consistent with Dr. Elmi's opinion, which mirrors plaintiff's subjective symptom complaints. Thus, the ALJ did not err in finding Dr. Elmi's opinion unpersuasive.

### III. Obesity Consideration

Finally, plaintiff argues the combined effects of obesity with other impairments can cause greater limitations and the ALJ failed to properly consider and explain the limiting effects of obesity in fashioning the residual functional capacity.

The ALJ found that plaintiff's obesity was a severe impairment. Tr. 17. The ALJ also considered plaintiff's obesity and found it "does not increase the severity of coexisting impairment to such an extent that the combination of impairments meets a listing." Tr. 18. Specifically, the ALJ noted that plaintiff's "laboratory results, EKG, and medical imaging were all within normal limits" and that plaintiff "(while obese) was otherwise healthy appearing and in no acute distress." Tr. 22 (citing Tr. 1786). The chart notes cited to by the ALJ indicate that plaintiff was "healthy appearing," had no shortness of breath, ambulated without assistance, and had normal movement in all extremities. *Id.* (citing Tr. 1786). Also, notably, Dr. Elmi did not list obesity as a factor in formulating an opinion about plaintiff's functional ability. Accordingly, the ALJ did not err in this regard.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED September 30, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge